STATE, BY WALTER F. MONDALE, ATTORNEY GENERAL, v.
ALBERT G. BOHNEN AND OTHERS.
BECHIK PRODUCTS, INC., APPELLANT.

140 N. W. (2d) 838.

March 4, 1966—Nos. 39,469, 40,087.

*Paul A. Skjervold,* for appellant.

*Robert W. Mattson,* Attorney General, *Perry Voldness,* Deputy Attorney General, and *Karl J. Herman,* Special Assistant Attorney General, for respondent.

SHERAN, JUSTICE.

Appeal from a judgment of the district court.

On November 30, 1962, a commissioner's award in the amount of $339,000 was filed in the District Court of Ramsey County as compensation for the condemnation of appellant's office building by the State of Minnesota for trunk highway purposes. Appellant continued to occupy the premises until October 31, 1963, a period of 11 months from the date of the taking. On January 20, 1963, the state made partial payment of $304,000.

Upon appeal to the district court a verdict for $328,229 was returned. It is the law that the state is obligated to pay interest at the rate of 6 percent per annum on this amount from November 30, 1962 (the date on which the award of the commissioner was filed) to January 20, 1963 (the date of the partial payment) and interest on the balance ($24,229) at the same rate until finally paid.[1]

At trial, counsel for the state moved to offset against the amount due the landowner the reasonable rental value of appellant's occupancy from the date of the taking (November 30, 1962) to the date on which possession was relinquished (October 31, 1963). No demand was made by either the state or the owner that the jury determine this amount and it was reserved for decision by the court with the apparent acquiescence of the parties.

Thereafter, the district court found the reasonable rental value of the building during the period from November 30, 1962, to October 31, 1963, to have been $2,500 per month — this amount to be offset as against the sum otherwise payable by the state on account of the taking.

The significant issues raised by the appeal are these:

---

[1] See, Minn. St. 117.16; Warren v. First Div. of St. P. & P. R. Co. 21 Minn. 424; City of Minneapolis v. Wilkin, 30 Minn. 145, 15 N. W. 668; Ford Motor Co. v. City of Minneapolis, 143 Minn. 392, 173 N. W. 713.

(1) Should the district judge decide the reasonable market value of the use and occupancy of condemned premises between the date of taking and the date possession is relinquished when there is no demand for a jury determination of the issue before the commencement of the trial?

(2) Will evidence of the reasonable rental value of the property before the taking support a finding of its reasonable rental value between the time of the taking and the time of the transfer of possession?

(3) Should the amount credited to the condemnor on account of the reasonable rental value of the property taken between the time of the award and the time of the relinquishment of possession be limited in amount to either (a) interest accruing on account of the unpaid award between the date of taking and the dates of payment, or (b) interest which would have been accrued on the amount of the award had no part of it been paid before transfer of possession.

■ There are expressions in our cases supporting the proposition that the trial court may determine the reasonable rental value of the condemned property between the time of the taking and the time of the relinquishment of possession without the aid of a jury.[2]

There are no Minnesota cases which direct that the condemnor must demand a determination of the value of the use prior to the commencement of the trial. We are satisfied from the record before us that both parties were willing that this fact question be determined by the trial judge without the aid of a jury.

Whatever confusion exists on this point will be avoided in the future if the state will notify the landowner in writing a reasonable time prior

---

[2] In Ford Motor Co. v. City of Minneapolis, 143 Minn. 392, 396, 173 N. W. 713, 715, we said: "The statute contains no specific provision that the court shall determine either the amount of the interest, or the amount deductible therefrom for the use of the premises, if used by the landowner after the filing of the original award; but, in order to make the proceedings effectual and accomplish the purpose intended, the court must determine the various incidental questions that arise, and, as said in effect in the Warren case, the statute undoubtedly contemplates that the court will do so." See, also, Ford Motor Co. v. City of Minneapolis, 147 Minn. 211, 179 N. W. 907, and Pettingill Theatre Co. v. City of Minneapolis, 256 Minn. 266, 98 N. W. (2d) 207.

to trial of its intent to claim an offset for the landowner's use of the condemned property subsequent to the filing of the award, stating in the notice the amount to be claimed. If the amount so claimed is not accepted by the landowner, the proper procedure will be for him to serve notice upon the state within 10 days thereafter of his grounds for disagreement. Unless the parties stipulate otherwise, evidence should be taken in connection with the condemnation proceedings upon the issue thus framed and the matter should be submitted to the jury upon a special interrogatory. By stipulation or implicit consent, the question can be reserved for hearing and determination by the trial court after the verdict fixing the amount of damages sustained by the landowner has been returned.

■ The value of the condemnee's use of the condemned property between the time of the award and the relinquishment of possession is the fair and reasonable market value of the use of such property during this period.[3] A significant factor in fixing this value is the certainty that possession will be taken by the condemnor in a limited period of time. In contrast, before condemnation one interested in using the realty has a reasonable expectation that his use and possession will continue so long as a rental arrangement is made on terms satisfactory to the owner. Everything else being equal, therefore, it is evident that the fair and reasonable market value of the use of condemned property will be substantially less after condemnation than before. To fix this value in the ordinary case there must be a separate assessment of it by witnesses who have taken into account the effect of the condemnation. The trier of fact should have the benefit of this evidence before a determination is made.

■ Whether the value of the use once determined can serve as an offset against the principal sum awarded as of the date of the taking is a question that has never been resolved by our decisions. Such opinions as we do have in this area seem to proceed on the assumption that the "offset" would be to interest only.[4] The history of the problem suggests

---

[3] See, Ford Motor Co. v. City of Minneapolis, 147 Minn. 211, 179 N. W. 907.

[4] See, Warren v. First Div. of St. P. & P. R. Co. *supra;* Ford Motor Co. v. City of Minneapolis, 143 Minn. 392, 173 N. W. 713; Ford Motor Co. v.

that the reason we have allowed an offset for the reasonable value of use between the time of the taking and the relinquishment of possession is that the landowner gets interest on the amount of the award from the date of the taking even though the condemnor does not actually acquire possession until later.[5] Stated in another way, it is the condemnor's duty to pay interest which gives rise to its right to offset. This aspect of the matter, coupled with the fact that condemnation proceedings are not consensual, has led us to conclude that the offset should not exceed the interest on the award from (a) the date of the taking until (b) the date possession is relinquished by the condemnee, prepayment being disregarded. The assurance of a ceiling on rental exposure will encourage use of the premises by the condemnee after the taking and reduce the waste resulting from needlessly early abandonment of the condemned property.

When the duty to pay interest has been abated by partial prepayment,

City of Minneapolis, 147 Minn. 211, 179 N. W. 907; Pettingill Theatre Co. v. City of Minneapolis, *supra*.

[5] If this court had adopted a rule that interest would not accrue until possession was relinquished by the condemnee, there would have been no occasion to determine the value of possession after the taking. However, this court early decided that such a rule would be inconsistent with the constitutional concept of just compensation. The refusal of interest for a period of retained possession would have the effect of charging the condemnee for the use in an amount equal to the interest, and would fall short of just compensation where the interest exceeded the actual value of the use. In Warren v. First Div. of St. P. & P. R. Co. 21 Minn. 424, 427, we said: "It cannot be assumed that the value of this legal right [possession] is equivalent to the interest on the assessed value of the land. From the time of the award, he is practically deprived of his right to dispose of the land. His possession is precarious, liable to be terminated at any time; he cannot safely rent; he cannot safely improve; if he sows, he cannot be sure that he will reap. As he is *not placed in this position by any act of his own, is not in as a wrongdoer,* nor under any contract, there would be no justice in charging him with any *assumed value* of the use. Where the owner has actually derived benefit and value from his possession and use, between the filing of the award and the assessment by the jury, the value of such possession and use may be ascertained by the jury, and the amount of it deducted from the interest allowed."

See, also, City of Minneapolis v. Wilkin, 30 Minn. 145, 15 N. W. 668.

the interest actually payable by the state will be less than that which would otherwise accrue. It would be inconsistent with the principles of equity, with which we are concerned, to use the amount of interest actually to be paid by the state as the ceiling for the offset because to the extent that this is done the landowner gets the benefit of both possession and the prepayment. For this reason the maximum amount of the offset will be determined by computing the interest on the amount of the award (or the verdict substituted in lieu of the award) from the date of its filing to the date upon which possession of the condemned realty is relinquished to the condemnor. As an illustration, in this case the offset ceiling is approximately $18,000, i. e., interest on the $328,229 from November 30, 1962, to October 31, 1963.

The disposition by the trial court was based upon the theory that the parties consented that the matter be determined by the court after the verdict was returned and on the basis of the evidence submitted in the main action. We agree that the record could support a finding of such consent, express or implied. On the other hand, we are satisfied that the attorney for the landowner was proceeding at all times on the assumption that the amount of the offset would be limited to the interest actually payable by the state on account of the award, i. e., as applied to this case, the sum of approximately $4,000.

This assumption was at least partially justified and resulted from the absence of any clear precedent in our decisions. We have, therefore, concluded that there should be a new trial on the issue of the reasonable rental value of the condemned property during the period from November 30, 1962, until October 31, 1963, and that the offset shall not exceed the interest which would have accrued on the sum awarded as damages for the taking had there been no prepayment, i. e., approximately $18,000.

We agree with the trial court that the parties have consented that the issue be submitted to him for decision and, unless otherwise stipulated, the determination will be made by the court without a jury upon evidence to be received in accordance with paragraph 2 of this opinion.

Affirmed in part; reversed in part.