STATE HIGHWAY COMMISSIONER *v.* SCHULTZ.

1. EMINENT DOMAIN—COMPENSATION FOR TAKING PART OF A PARCEL.
    Just compensation in condemnation proceedings for the taking
    of a part of a parcel of property is not measured by the pro-
    portionate area taken but by the amount to which the value of
    the property from which it is taken is diminished (CL 1948,
    § 213.171 *et seq.*).

2. SAME—AWARD—REVIEW BY SUPREME COURT—EVIDENCE.
    The Supreme Court on appeal in condemnation proceedings re-
    views the finding of damages merely to see that it is supported
    by the evidence and will not disturb the award made when it
    is so supported, the case not being heard *de novo* (CL 1948,
    § 213.171 *et seq.*).

3. SAME—CONDEMNATION PROCEEDINGS—DUTIES OF COMMISSIONERS.
    Commissioners, when appointed in condemnation proceedings, are
    a constitutional tribunal with the same powers and duties as
    a jury, are expected to view the premises, and use their own
    knowledge gained from such view and their experience as
    freeholders, as well as the testimony of witnesses as to matters
    of opinion, as they are the judges both of the law and fact
    (Const 1908, art 13, §§ 1, 2; CL 1948, § 213.171 *et seq.*).

4. SAME—CONDEMNATION PROCEEDINGS—REVIEW BY SUPREME COURT.
    The proceedings in the Supreme Court to review an award in con-
    demnation proceedings are in the nature of certiorari (CL
    1948, § 213.171 *et seq.*).

5. SAME — INTERSTATE HIGHWAY — CONDEMNATION PROCEEDINGS —
    AWARD—GRAVEL—EVIDENCE.
    Order by circuit court confirming award of $64,042.37 by com-
    missioners for the absolute taking of 16.5 acres for use in

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 18 Am Jur, Eminent Domain §§ 265, 353.
[2, 4] 18 Am Jur, Eminent Domain §§ 373–377.
[3] 18 Am Jur, Eminent Domain § 339.
[5] 18 Am Jur, Eminent Domain §§ 342–356.

right-of-way, the ruination of .12 of an acre, and separation of 2.32 acres without access to remaining 13.3 acres of farm containing valuable sand and gravel deposits, *held*, not contrary to evidence presented in condemnation proceedings for interstate limited access highway (CL 1948, § 213.171 *et seq.*).

Appeal from Berrien; Hadsell (Philip A.), J. Submitted April 3, 1962. (Calendar No. 2, Docket No. 49,509.) Decided April 5, 1963. Rehearing denied May 9, 1963.

Condemnation proceedings by John C. Mackie. State Highway Commissioner, of land owned by Lydia Schultz. Plaintiff moved to set aside determination of commissioners as to damages. Award confirmed. Plaintiff appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Eugene Krasicky,* Solicitor General, *Louis J. Caruso* and *Robert J. Taube,* Assistant Attorneys General, for plaintiff.

*Hartwig & Crow (John L. Crow,* of counsel), for defendant.

SMITH, J.   This appeal arises out of proceedings in eminent domain instituted by appellant highway commissioner pursuant to PA 1925, No 352, as amended.* Said proceedings resulted from the improvement of trunk line highway US-12, now Interstate 94 or I-94. Appellant is appealing from an order entered in the circuit court of Berrien county confirming an award of damages rendered by 3 appointed commissioners in the amount of $64,042.37.

Appellee owned a rectangular parcel of land consisting of 32-1/2 acres facing the west side of trunk line M-140, a north-south highway, located south of the village of Watervliet in Berrien county. Ap-

---

* CL 1948, § 213.171 *et seq.* (Stat Ann 1958 Rev § 8.171 *et seq.*).—
REPORTER.

pellant in laying out plans for the relocation of trunk line US–12 needed a strip of land across appellee's property. Negotiations for the purchase of this property were commenced in August 1957. The parties being unable to agree on a price, appellant initiated proceedings in eminent domain by first tendering a final offer to appellee and serving notice of a hearing on necessity to be conducted by appellant on July 22, 1958.

At the time appellant made his final offer of settlement, the property was devoted exclusively to farming. However, on July 18, 1958, appellee entered into a 3-year lease for the sale of sand, gravel, and soil from the west half of her property. The document was recorded in the office of the register of deeds for Berrien county on the afternoon of July 21, 1958, the day before the hearing on necessity. The lessees were Betty Jane Yerington and John S. Yerington, both of whom are associated in business with John G. Yerington, an established contractor in the road building business. This road builder became the subcontractor furnishing processed sand and gravel to the principal contractor in charge of construction along this section of US–12.

Appellant on July 28, 1958, secured the highway right-of-way by virtue of the determination of necessity. On August 30, 1958, the lessees under the gravel lease assigned their interest to appellee, the intention being "to release entirely any recovery had in connection with condemnation proceedings" affecting the property. Subsequent to the signing of the determination of necessity, appellant, upon becoming aware of the leasehold interest in the property, sought leave to amend the determination of necessity to include the lessees as parties in interest. By stipulation of counsel, the amendment was allowed. At the hearing on damages before the commissioners, appellee put into evidence the assign-

ment from the lessees to the appellee of any compensation which lessees would have been entitled to, by virtue of their leasehold interests in the property.

The highway right-of-way extended generally in an east-west direction across the property. It consisted of the absolute taking of 16-1/2 acres for limited access highway purposes for the relocation of trunk line US–12, now designated I–94. In addition, .12 acre was acquired north of and contiguous to the limited access right-of-way as an easement to be used only during the period of construction, although as a result of construction it was left at such an angle and grade it was of no practical use to the owner. The effect of the combined takings was to separate the remaining property into 2 parcels: (1), approximately 13.3 acres, containing the farmhouse and other improvements located south of the new highway, and (2), approximately 2.32 acres located north of the highway. Appellee had no means of access to the 2.32 acres of land.

At the hearing on damages, appellant highway commissioner presented 7 witnesses. One of his witnesses gave expert testimony as to the value of appellee's property, and he stated that the highest and best use was for farming. However, he admitted that he gave consideration to the fact that sand and gravel deposits enhanced the value of the property over and above its use solely as a farm. Another of appellant's witnesses, a real-estate broker doing business in Berrien county, testified that in attempting to evaluate the gravel potential of the property he talked to all available gravel contractors in the area regarding purchases they had made in the last 10 years. His opinion was that the sand and gravel deposits enhanced the value of the land by $17,800 (his opinion was that the value of the right-of-way before the taking was $32,800, and after was $15,800).

Appellee presented 6 witnesses to testify in her behalf. One of appellee's witnesses, the operator of a gravel pit, testified that the sand and gravel on appellee's property was of good quality and would justify a price of at least 20¢ to 25¢ per cubic yard. With these valuable deposits the property would be worth considerable more than $1,000 per acre, he said. Another witness for appellee was the principal contractor on the project. He testified that in his opinion the highest and best use of appellee's property was as a sand and gravel pit rather than a farm. This was due, he said, to the lack of availability of gravel in the area generally. He testified that of the 341,000 tons or more taken out of the right-of-way on appellee's property only about 150,-000 tons were actually used on the project as it crossed appellee's property. He testified that prices quoted of $2.20 per ton represented the reasonable market value in the area at the time.

On April 4, 1960, the commissioners filed their report. It is quoted herewith, in part:

"We appraise the damages to be paid to the parties interested in said lands as compensation for the taking of an easement or fee in, over and upon the same for highway purposes, in the amounts set forth below. We have taken into consideration in connection therewith the benefits, due to such improvement, as were found to accrue to the remainder of the property from which the highway parcels are taken.

Parcel No. C–60 and C–60 GR

| | |
|---|---|
| Damages | $64,042.37 |
| Benefits | $ . . . . . . . |
| Damages less benefits | $64,042.37" |

The report was signed by all 3 commissioners.

Thereafter, appellant highway commissioner moved to set aside the award, chiefly on grounds that the commissioners' award exceeded the value

of the property by erroneously attributing value on each separate element of damage in the following manner: (a) $27,337.20 for loss of granular material; (b) $16,045.17 for loss of sand and gravel; (c) $17,000 for loss as an operating farm; (d) $3,660 for loss of fill material; (e) $300 for noise and disturbance. These allegations were based upon the affidavit of 1 of the commissioners who heard the matter and who signed the commissioners' report. Appellee opposed the motion on the grounds that the award represented the amount by which the value of the entire parcel was diminished by the taking based on its highest and best use as of July 28, 1958. The other 2 commissioners gave their affidavits in support of appellee's position. Over appellee's objection, testimony was taken from 1 of the commissioners. This commissioner was a lawyer; the other commissioners were laymen. It was his testimony that he gave 2 instructions to the other commissioners: (1) that the award had to be within the range of testimony; and (2) an instruction based upon the case of *In re Condemnation for Battle Creek Park*, 341 Mich 412, that the value of the minerals should be taken into consideration as affecting the total value of the property taken. The circuit judge after hearing the testimony refused to set aside the award, and thereafter entered his order for confirmation of the award. Upon application of the commissioner, we granted leave to appeal.

On appeal, the highway commissioner contends that: (1) the award did not represent the difference between the market value before the taking and after the taking of the right-of-way; (2) that the mineral deposits were evaluated separately from their relationship to the land; (3) that the over-all value was determined by adding together values from 2 different uses which were incompatible, that is, farming and a gravel pit; (4) that the value of

the mineral deposits was based upon a nonexistent market; and (5) that the award was predicated upon testimony that the over-all costs of the construction project were reduced as a result of the acquisition of appellee's property, in view of its rich mineral deposits in close proximity to the project. Appellee says the only question is, Was there evidence of such a nature that could properly be considered by the commissioners to justify the award?

The rule which governs when only a portion of property is taken by eminent domain has been set forth in numerous cases. It is stated succinctly in the case of *In re Widening of Fulton Street,* 248 Mich 13, 20 (as *City of Grand Rapids* v. *Barth,* 64 ALR 1507):

"The rule for compensation has been announced by this court as follows:

" 'Where only part of a parcel is taken, just compensation is not measured by proportionate acreage but by the amount to which the value of the property from which it is taken is diminished.' *Johnstone* v. *Detroit, G. H. & M. R. Co.,* 245 Mich 65, 81 (67 ALR 373)."

See, also, *State Highway Commissioner* v. *Specker,* 342 Mich 111; *In re State Highway Commissioner's Petition, State Highway Commissioner* v. *Sypher,* 310 Mich 93, at page 99.

It might be helpful to refer to some of the fundamental rules, which rules have stood the test of time. They are just as useful today in the era of superhighways as in the days of the wagon trails. First, it is not within the province of the Court to review the question further than to see that the finding is supported by the evidence. *Boyne City, G. & A. R. Co.* v. *Anderson,* 146 Mich 328 (8 LRA NS 306, 117 Am St Rep 642, 10 Ann Cas 283). If the jury's award is within the evidence, it may not be disturbed

on appeal. *In re Petition of the City of Detroit for a Park Site,* 227 Mich 132. We do not hear an appeal in a judgment from a condemnation proceeding *de novo. In re Petition of the City of Detroit for a Park Site, supra.* We said in *In re State Highway Commissioner,* 249 Mich 530, that commissioners, when appointed, are a constitutional tribunal with the same powers and duties as a jury, authorized to act in condemnation cases.* The commissioners are expected to view the premises and to use their own knowledge gained from such view and their experience as freeholders, as well as the testimony of witnesses as to matters of opinion. They are the judges both of the law and fact. Relative to the probative value of testimony concerning gravel on property to be taken, we held in *In re Condemnation for Battle Creek Park,* 341 Mich 412, at 421, that it was not improper for the court to receive testimony as to the content and price of gravel on the premises. In that case, the court instructed the jury that they might take this testimony into consideration in determining the value of the land. Accepting the minimal figure as to the amount and value of mineral deposits on appellee's property, even without other testimony, would place the commissioners' award well within the range of testimony. This must be viewed, of course, in connection with certain of the testimony presented by appellee that the highest and best use of the property was that of a gravel pit.

Appellant highway commissioner earnestly asserts that the method of arriving at the award is erroneous. Much of his case depends upon the assertions made by 1 of the commissioners in his affidavit. This commissioner, by his affidavit, denies that the commissioners followed the legally approved method of making an award as contained in the commis-

---

* See Const 1908, art 13, §§ 1, 2.—Reporter.

sioners' report, to which he was a signatory without dissent. The other commissioners, in their affidavits, claimed they followed the method contained in their report. This is supported by testimony of 1 of the commissioners.* The proceedings before this Court to review an award are in the nature of certiorari. *Flint & Pere Marquette R. Co.* v. *Detroit and B. C. R. Co.,* 64 Mich 350. We cannot say, after full review of the record, that the award was palpably contrary to the evidence and that, as a matter of law, should be set aside.

We deem it unnecessary to discuss other issues presented.

Affirmed. Costs to appellees.

CARR, C. J., and DETHMERS, KELLY, BLACK, KAVANAGH, and SOURIS, JJ., concurred.

O'HARA, J., took no part in the decision of this case.

---

* Although appellant originally petitioned to take the testimony of the 2 commissioners who made their affidavit in support of the award, appellant waived the nonappearance of the other commissioner, who apparently was attending a funeral out of State on the day testimony was taken.