CITY OF FENTON v LUTZ

1. EMINENT DOMAIN—CONDEMNATION OF PROPERTY—RENTAL CHARGES
—USE BY CONDEMNEE—TAKING OF POSSESSION—STATUTES.

The statutes pertaining to the condemnation of property for
public use do not provide for the payment of rent by the party
whose real estate is condemned to the condemnor for the use of
the land by that party for the period from the date of taking
until the condemnor actually gets physical possession and no
such promise or obligation to pay for use and occupation of
condemned land during such period can be implied (MCLA
213.361 *et seq.;* MSA 8.261[1] *et seq.).*

2. EMINENT DOMAIN—EVIDENCE—SUBSTANTIVE EVIDENCE—TESTIMONY
—REPLACEMENT VALUE—IMPROPRIETY OF OFFER.

A defendant's testimony in a land condemnation action as to the
replacement value of his property which a plaintiff was seeking
to take for public use was improper; however, there was no
prejudice to the plaintiff where this testimony was not claimed
to be substantive evidence of the value of the defendant's
property but was used to illustrate the impropriety of the
plaintiff's offer, which was less than the value arrived at by the
plaintiff's appraiser, and to show the difficulties facing the
defendant in order to maintain his business.

3. EMINENT DOMAIN—CONDEMNATION PROCEEDINGS—AWARD OF COM-
PENSATION—EVIDENCE—STANDARD OF REVIEW.

The Court of Appeals reviews the award of compensation in
condemnation proceedings merely to see that it is supported by
the evidence and an award that is within the range of testi-
mony produced at trial as to the value of the property should
be affirmed.

REFERENCES FOR POINTS IN HEADNOTES
[1] 26 Am Jur 2d, Eminent Domain §§ 131, 152.
   27 Am Jur 2d, Eminent Domain § 247 *et seq.*
[2] 27 Am Jur 2d, Eminent Domain §§ 421, 440.
[3] 27 Am Jur 2d, Eminent Domain § 471.
[4] 26 Am Jur 2d, Eminent Domain §§ 173, 177.
   27 Am Jur 2d, Eminent Domain §§ 267, 293.
[5] 27 Am Jur 2d, Eminent Domain §§ 293, 427, 428.

4. Eminent Domain—Condemnation Proceedings—Award of Compensation—Personal Property.
    Condemnation awards in a land condemnation proceeding can provide for the loss of personal property.

5. Eminent Domain—Condemnation Proceedings—Evidence—Sufficiency of Evidence—Discretion of Trial Judge—Personal Property.
    It is within the discretion of a trial judge, at a land condemnation proceeding, to determine whether there is sufficient evidence to submit to a jury the question of the necessity to abandon certain personal property.

Appeal from Genesee, Philip C. Elliott, J. Submitted December 7, 1976, at Lansing. (Docket No. 24292.) Decided January 5, 1977.

Petition by the City of Fenton to condemn certain land owned by Robert C. Lutz and Elizabeth Lutz, his wife. Judgment of condemnation and compensation granted. Plaintiff appeals claiming the compensation is excessive. Affirmed.

*Albert H. Callahan,* for plaintiff.

*Philip H. Weaver* and *Travis, Warren, Nayer & Burgoyne,* for defendant.

Before: D. E. Holbrook, P. J., and Allen and D. C. Riley, JJ.

D. E. Holbrook, P. J. Plaintiff-city, acting under authority granted it pursuant to MCLA 213.361; MSA 8.261(1), filed a condemnation petition in the Genesee County Circuit Court on July 3, 1974, in order to begin proceedings against property owned by defendants. Following trial of the matter, a Genesee County Circuit Court jury returned the verdict for the amount of $32,048 of compensation to defendants. Plaintiff appeals as of right.

Plaintiff proceeded with condemnation of defend-

ants' property according to the requirements of MCLA 213.361, *et seq.;* MSA 8.261(1), *et seq.* A deposit of the estimated just compensation for the property to be condemned was made with the city treasurer on July 2, 1974. A declaration of taking was filed and recorded with the register of deeds on July 19, 1974, and an order issued from the trial court on August 23, 1974, which required defendants to surrender possession of their property on or before December 1, 1974. Subsequently there was a motion to extend surrender of possession and the trial court ordered the actual physical possession be surrendered on or before February 1, 1975. This order was complied with.

The estimated compensation deposited with the city treasurer totaled $17,325, with $16,250 of that amount being compensation for the land and buildings owned by defendants, and $1,075 as compensation for the fixtures. Defendants contested the amount of the compensation, but did not contest the necessity of the taking.

Plaintiff-city maintains that the trial court erred in refusing to grant plaintiff an award of rent for the period from the date of taking until the date the city actually got physical possession. A panel of this Court recently held that such an award is proper.

"MCLA 213.367; MSA 8.261(7) provides that a declaration of taking be filed by the condemning authority. Within ten days of such notice, the property owner may file a motion to review the necessity of taking. MCLA 213.368; MSA 8.261(8). If no such motion is filed, title to the property vests in the petitioner after the amount of estimated compensation is deposited with the treasurer. MCLA 213.369; MSA 8.261(9). The value of the use and occupancy of the land by the owner after title thereto was vested in the city is properly deductible from the award. See *In re Urban Renewal, Elmwood Park,* 376

Mich 311, 318; 136 NW2d 896 (1965). See generally, Anno, 20 ALR3d 1164 (1968). *Cf. Rosen v Detroit,* 242 Mich 690; 219 NW 726 (1928), which concerned a provision of a city charter and which case was decided prior to the enactment of the statutes applicable herein." *Algonac v Robbins,* 69 Mich App 409, 416; 245 NW2d 68 (1976).

The facts in *Algonac* are unclear and there does exist the possibility that the date of declaration of taking and the date of surrender of possession are the same. However, if that decision stands for the rule that the date of taking prevails for charging the condemnee rent instead of the date of surrender of possession, we must disagree.

The Michigan condemnation act, MCLA 213.361, *et seq.;* MSA 8.261(1), *et seq.;* represents an attempt by the Legislature to enable various condemning governmental agencies, in the absence of any controversy as to the necessity of the taking, to quickly obtain title and possession of condemned real property without the inherent delay found in a normal civil action. To do so, the Legislature has allowed the petitioning governmental agency to gain quick title to the premises, while insuring that the private property owner will have the right to receive just compensation for his property.

Under MCLA 213.366 through MCLA 213.370; MSA 8.261(6) through MSA 8.261(10), when the petitioning condemnor is unable to agree with the condemnee for the voluntary purchase and sale of the property in question and after a good faith written offer to purchase the property is rejected by the property owner, the governmental agency may file a petition in condemnation, a notice and a declaration of taking, together with an estimate of just compensation. After the deposit of the esti-

mated compensation is made, and the declaration of taking is filed with the register of deeds, title to the subject property vests in the petitioner-condemnor and the right to just compensation vests in the respondent property owner. The property owner may by appropriate order have the deposited estimated compensation paid over at that time. Under MCLA 213.370; MSA 8.261(10), upon the filing of the declaration of taking and the deposit of estimated compensation a hearing is scheduled for the court to fix a time and terms for surrender of the premises to petitioner and the court is empowered therein with authority to enforce surrender of possession by an appropriate order or writ of assistance. The matter is thereafter set over for trial on the sole issue of just compensation. See MCLA 213.373; MSA 8.261(13), and MCLA 213.374; MSA 8.261(14). A trial is then held and verdict and judgment granted. MCLA 213.375 through MCLA 213.381; MSA 8.261(15) through MSA 8.261(21). Under MCLA 213.381; MSA 8.261(21), if a judgment is granted for an excess over the deposit of the estimated compensation, interest on said excess commences at the time fixed by the court for *surrender of possession* and not from the date of the declaration of taking which vested in the condemnor.

The effect of the several statutory provisions is to permit the condemning authority to quickly acquire title to the subject property upon the performance of certain acts while attempting to secure and protect the rights of the condemnee on the issue of just compensation for the taking within the meaning of the provisions of the Federal and Michigan constitutions, US Const, Am V; Const 1963, art 10, § 2, which prohibits the state from taking any private property without just

compensation being provided to the property owner.

The statute does not expressly provide for payment of rent during the period between the technical transfer of title and the actual date of surrender of the premises. The act does expressly provide that the condemnee will not be entitled to interest on his judgment award *for this period.* MCLA 213.381; MSA 8.261(21). Why a condemnor would be entitled to rent for this period is unclear to us. It would seem that the Legislature has provided for a date of technical transfer of title followed by a grace period in which the parties retain their status quo. Apparently title will vest in the condemnor, however, the condemnee is given a period in which to move, make arrangements for new quarters, to decide whether or not to challenge the proposed condemnation award, and to do whatever else is necessary in order to protect his rights. To allow the condemnor to charge rent for this short period of time appears contrary to legislative intent, and may well constitute a constitutional violation.[1]

Under the former practice in Michigan, necessity and just compensation were both determined at one time. See *Rosen v Detroit,* 242 Mich 690; 219 NW 726 (1928), *Campau v Detroit,* 225 Mich 519; 196 NW 527; 32 ALR 91 (1923). Under that slow and cumbersome process the condemnor's right and title to the property did not fully vest until payment on a final judgment, however, the condemnee was entitled to interest on the judgment from the date of the judgment. It was held that the condemnor, however, was not entitled to any payment for the condemnee's use of the property between the date of judgment and the final

---

[1] US Const, Am V; Const 1963, art 10, § 2.

payment date. *Rosen, supra.* Apparently, however, the Legislature determined that this process was too slow and separated the determination of necessity and just compensation and sought to speed up the process. The Legislature did not provide for the payment of rent, however. One principle advanced in *Rosen* is still applicable today, "[n]o promise or obligation on the part of plaintiffs to pay the city for use and occupation during such period can be implied". 242 Mich at 692. We agree, had the Legislature felt it was appropriate to pay the condemnor rents, it could have so provided. Whether the Legislature could provide for payment of such rents while denying the condemnee interest on the award for such period, we need not decide.

A more recent Supreme Court case has apparently been cited as support for the holding in *Algonac, supra. In re Urban Renewal, Elmwood Park Project,* 376 Mich 311; 136 NW2d 896 (1965). That case determined that rent was payable from the time of taking. *Elmwood Park* was based on significantly different circumstances. *Elmwood Park* was not decided on the basis of this statute, but involved prior law in which the time of taking was normally determined when necessity had been determined and compensation ordered in a single proceeding. In *Elmwood Park* there was a constructive taking of the property many years prior to the implementation of proper condemnation proceedings. The condemnee sought a determination based on the value of the property at the time of this constructive taking (a much higher value). The condemnee in this action, based on equitable principles, would be entitled to interest from that date. The condemnor, however, was entitled to deduct from this award any amounts that accrued

to the owner from the date of possession of the property after the taking of this property. In *Elmwood,* it would have been inequitable to permit the condemnee to receive an award, plus interest on that award, from the date prior to the actual condemnation proceedings and then to allow the condemnee to reap the benefits of the continued possession of the constructively condemned property. Reliance on *Elmwood Park* as authority for the proposition that a condemning authority can offset an award for compensation pursuant to this condemnation act with the value received by the condemnees for possession of their property from the date of the declaration of taking to the date of the court-ordered surrender of possession of the premises is misplaced.

Plaintiff-city also contends that the jury award herein was excessive and that it was influenced by improper testimony. Plaintiff's appraiser valued the property at $20,000, while defendant's appraiser testified that it was worth $26,400. Defendant, however, properly testified that the value of the property was $35,000. He also testified over plaintiff's objection that the cost to him to purchase a replacement was $70,000.

Testimony regarding the value of the replacement property was improper. However, the defendant did not claim that this replacement was substantive evidence of the value of his property, but only used this value to illustrate the impropriety of the city's offer of $16,000, which was less than the value that plaintiff's appraiser arrived at, and to show the difficulties facing him in order to maintain his business. The jury award was within the range of testimony produced at trial and will now be affirmed on appeal. *State Highway Commission v Great Lakes Express Co,* 50 Mich App

170; 213 NW2d 239 (1973), *State Highway Commissioner v Miller,* 5 Mich App 591; 147 NW2d 424 (1967). We rule the evidence as to replacement value, although error, did not prejudice the plaintiff.

We must also determine if the jury could properly award defendant $1,000 for 200 used television sets abandoned by defendant when he moved. This Court has determined that condemnation awards can provide for the loss of personal property. *Algonac v Robbins, supra, State Highway Commissioner v Miller, supra.* The evidence adduced at trial was rather thin as to the necessity of abandonment of these television sets and as to the failure of defendant to sell, salvage, store or move these sets. We can see the practical difficulty which defendant may have had in doing so. We suggest in the future that trial courts look to such efforts in deciding whether compensation for personal property is allowable. However, sufficiency of evidence to submit to the jury such a question is a matter within trial court discretion. *Algonac, supra.* Because the compensation awarded appears reasonable and was supported by evidence adduced at trial, and because this case was tried before this Court's opinion and guidance in *Algonac v Robbins,* we will not disturb the jury award. *State Highway Commissioner v Miller, supra, State Highway Commissioner v Schultz,* 370 Mich 78; 120 NW2d 733 (1963).

Affirmed.